# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**BRIAN M. CASEY,**
**DOC # 139647,**

    **Plaintiff,**

vs.                                                              Case No.  4:22cv069-MW-MAF

**RICKY DIXON, SECRETARY OF**
**THE FLORIDA DEPARTMENT OF**
**CORRECTIONS, et al.,**

    **Defendants.**
**_____/**

## REPORT AND RECOMMENDATION

The pro se Plaintiff initiated this case on February 16, 2022, by submitting a § 1983 civil rights complaint, ECF No. 1, an application to proceed without prepaying the filing fee, ECF No. 2, and a motion for a preliminary injunction, ECF No. 3.  Plaintiff acknowledged within the complaint that has "three strikes," but sought to present a plausible claim for imminent danger.  ECF No. 1.  Finding his initial filings insufficient to proceed, Plaintiff was required to file an amended in forma pauperis motion and an amended complaint  ECF No. 5.  In March, Plaintiff was granted in forma pauperis status, ECF No. 8.

Plaintiff has now submitted a first amended complaint, ECF No. 11, which has been reviewed to determine if it is sufficient for service, demonstrates imminent danger, and states a plausible claim against each named Defendant.

Plaintiff is currently confined at Florida State Prison. ECF No. 11 at 2. No named Defendant is located at that institution. *Id.* at 2-3.

Plaintiff makes conclusory allegations, unsupported by specific facts, that two prior Secretaries of the Florida Department of Corrections (Michael Crews and Julie Jones) implemented a plan to prevent Plaintiff from challenging his criminal convictions from 2012. ECF No. 11 at 5-6. The plan includes preventing his access to the law library, keeping him in administrative confinement, and "repeatedly" transferring him from prison to prison. *Id.* at 5. Moreover, Plaintiff alleges that the plan was implemented at the instigation of a former Lee County Sheriff and former Governor Rick Scott. *Id.* at 6.

In the summer of 2018, Julie Jones allegedly visited Plaintiff with Defendant Ricky Dixon and told Plaintiff that "he would remain in mental health facilities or administrative confinement and he would continue to be attacked or harrassed [sic] by other inmates without protection." *Id.* at 14.

Without providing any factual support, Plaintiff claims Defendant "Dixon agreed with her [Julie Jones] and . . . continued the policy implimented [sic] by Michael Crews" that allows officers to "beat on Plaintiff without real investigations." *Id.* at 14. He also claimed that Defendant Archey "had Plaintiff attacked" by another inmate in September 2018, then "hid the weapon and filed a false report of the incident . . . ." *Id.*

In January 2021 Plaintiff was transferred back to Wakulla Correctional Institution and "classified as a protection management inmate" apparently due to some unexplained issue with the Latin King gang. *Id.* Plaintiff contends that he submitted a request for protection from Defendant Archey, which "caused Plaintiff to be placed in administrative confinement."[1] *Id.* at 15. While there, Plaintiff contends Defendant Archey and other officers subjected him to "constant abuses and threats," such as food tampering and "sexual abuse." *Id.*

Subsequently, Plaintiff claims Defendant Pridgeon told Plaintiff he would not "stop the abuses" and Plaintiff would be sent "to Florida State

---

[1] Judicial notice is taken that a request for protection will result in an inmate's placement in administrative confinement for the inmate's safety while the request is evaluated to determine if the inmate should be placed in protective management. FLA. ADMIN. CODE R. 33-602.220(1)(a).

Case No. 4:22cv069-MW-MAF

Prison to further stop criminal appeals." *Id.* at 15.  Defendant Proctor told Plaintiff he could not request protection from staff and, thus, Defendant "Archey could continue to harm Plaintiff."  *Id.*  On March 14, 2021, Plaintiff claims Defendant Archey caused a riot to "torment Plaintiff and instill fear of future harm."  *Id.*  In Plaintiff's subsequent hearing on his request for protection, held on April 9, 2021, Plaintiff alleges that Officer Noles denied Plaintiff protection and said "Plaintiff was going to die."  *Id.*  Defendant Dicks was allegedly present.  *Id.*  Further, Plaintiff makes a conclusory claim that Defendant Dicks allowed his staff to continue to threaten Plaintiff on a daily basis . . . ."  *Id.* at 15-16.  Plaintiff claims, without providing facts to support the assertion, there was conspiracy with all other Defendants to harm him and he was told that during their weekly inspections.  *Id.* at 16.

Plaintiff also claims that in June of 2021, Defendant Dicks told another inmate "that Plaintiff was a sexual predator that needed [to be] murdered . . . ."  *Id.* at 16.  Plaintiff contends that the inmate was told he could reenter the Gangster Disciples gang and be in open population "if he would kill or otherwise harm Plaintiff."  *Id.* at 16-17.  The inmate allegedly told Plaintiff he was being paid to fight Plaintiff and asked Plaintiff to accept $100 of a $300 fee he was being paid to attack him.  *Id.* at 17.

On June 23, 2021, Defendants Dick, Pridgeon, Weirick held an inmate classification team hearing and "berated" him for requesting protection from staff. *Id.* at 17. Plaintiff claims he was denied protection, put in close management as retaliation, and would not allow him to file grievances against them. *Id.* at 18. He claims his grievances "were never processed" and it was part of a pattern of denying access to the grievance procedures which exists at Wakulla C.I. *Id.* On July 9, 2021, he was transferred to Florida State Prison and placed on close management, which he contends was done as "punishment for filing protection management requests." *Id.*

Plaintiff acknowledges that he "is currently housed on close management at Florida State Prison," but says he "expects to be released from close management and placed back in population at Wakulla Correctional Institution . . . ." *Id.* at 19. He asserts that he "is in imminent danger with special circumstances." *Id.* He wants injunctive relief: (1) an order to enforce protection management procedures and grievance procedures; (2) to prohibit housing him in open population, but (3) to release him from close management status. *Id.* at 24. Plaintiff also seeks

declaratory relief, as well as compensatory, punitive, and nominal damages. *Id.* at 24-25.

Because Plaintiff is a "three striker," he cannot proceed in this case without full prepayment of the filing fee unless he faces "imminent danger of serious physical injury." 28 U.S.C. § 1915(g).[2] Plaintiff is admittedly housed at Florida State Prison. Because he is not physically located with any named Defendant, he has not shown that he faces imminent danger from them.

Notably, Plaintiff alleged an "expectation" that he would again be transferred back to Wakulla C.I. where he believes he will be attacked. First, judicial notice is taken that inmates are, by and large, not informed in advance of transfers as a security measure. Second, even if an inmate is notified that he will be transferred, he is not usually informed where he will be transferred, unless it is based on a "good adjustment transfer" and the prisoner has submitted a request to be transferred to a specific institution.

---

[2] The phrase "three strikes" is derived from 28 U.S.C. § 1915 which states: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Case No. 4:22cv069-MW-MAF

*See* FLA. ADMIN. CODE R. 33-601.215.[3]  A prisoner cannot request a good adjustment transfer if he has had a disciplinary infraction within two years, been "transferred for any negative reason" within the past two years, or been released from close management during the past two years.  *See* FLA. ADMIN. CODE R. 33-601.215(3) (citing http://www.flrules.org/Gateway/reference.asp?No=Ref-13410).  Thus, Plaintiff has not demonstrated that he is entitled to a good adjustment transfer and moreover, based on the allegations of his complaint, it would be incompatible with this action for Plaintiff to request a transfer to Wakulla C.I.

    Third, Plaintiff was previously informed that he "must explain how and why he believes that he will be returned to Wakulla C.I. and he must indicate when he believes the transfer will occur."  ECF No. 9.  Plaintiff did not do so.  His "expectation" of a transfer sometime in the future is not sufficient to show "imminent danger."  There is no indication that Plaintiff is likely to be returned to Wakulla C.I. in the near future; thus, because his return is not imminent, he has not shown imminent danger.  Rather, the basis of this case is Plaintiff's past experience at Wakulla Correctional

---

[3] Prisoners are not guaranteed to be transferred to one of his or her preferred locations.  FLA. ADMIN. CODE R. 33-601.215(3).

Case No. 4:22cv069-MW-MAF

Institution. Allegations of past physical harm are insufficient to establish that Plaintiff faces "imminent danger of physical injury" for purposes of § 1915(g). <u>Barber v. Krepp</u>, 680 F. App'x 819, 821 (11th Cir. 2017) (citing <u>Chavis v. Chappius</u>, 618 F.3d 162, 170-71 (2d Cir. 2010)). "Congress' use of the present tense in § 1915(g) confirms that a prisoner's allegation that he faced imminent danger sometime in the past is an insufficient basis to allow him to proceed in forma pauperis pursuant to the imminent danger exception to the statute." <u>Medberry v. Butler</u>, 185 F.3d 1189, 1192-93 (11th Cir. 1999) (citation omitted).

## **RECOMMENDATION**

It is respectfully **RECOMMENDED** that Plaintiff's amended complaint, ECF No. 11, be **DISMISSED** for failure to demonstrate imminent danger as required by 28 U.S.C. § 1915(g), and that the Order adopting this Report and Recommendation direct the Clerk of Court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(g).

**IN CHAMBERS** at Tallahassee, Florida, on April 8, 2022.

S/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE**

Case No. 4:22cv069-MW-MAF

## **NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No. 4:22cv069-MW-MAF